UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL LEE FULTZ,

Plaintiff,

v.                                                          CAUSE NO.: 3:19-CV-557-JD-MGG

INDIANA STATE OF, et al.,

Defendants.

OPINION AND ORDER

Michael Lee Fultz, a prisoner without a lawyer, suffers from severe mental

disabilities, and he has filed a complaint against numerous defendants about his

treatment while incarcerated at the Indiana State Prison. A filing by an unrepresented

party "is to be liberally construed, and a pro se complaint, however inartfully pleaded,

must be held to less stringent standards than formal pleadings drafted by lawyers."

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a

prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a

claim upon which relief may be granted, or seeks monetary relief against a defendant

who is immune from such relief.

Fultz indicates that he suffers from major depressive affective disorder,

borderline personality disorder, antisocial personality disorder, paranoid personality

disorder, and suicidal ideations. Between July of 2017 and December 21, 2018, he was

suicidal on numerous occasions. He is unhappy with the care received and the restrictions placed upon him throughout that time period. He has sued the State of Indiana, Wexford Health, Psychologist Dr. Wala, Psychiatrist Dr. Ikeman, Psychologist Dr. Taylor, Case Manager Mr. Taylor, Correctional Officer Jenkins, Correctional Officer Mangold, Superintendent Mark Sevier, Executive Director of Mental Health Mark Lewvenhagen, Correctional Officer Sego, and Correctional Officer Smith. He seeks both compensatory and punitive damages.

In July of 2017, Fultz told his therapist, Mr. Faenza, that he was having suicidal thoughts and needed to be put back on his medication. Mr. Faenza agreed, and talked with Psychiatrist Dr. Ikeman, but Dr. Ikeman refused to speak with Fultz to evaluate the need for medication and refused to prescribe medication to treat his condition. Having received no treatment after notifying Mr. Faenza of his suicidal thoughts and depression, Mr. Fultz attempted suicide by cutting himself on August 7, 2017.

After cutting himself, Fultz told Mr. Taylor that he was suicidal and needed to speak to mental health, but Mr. Taylor did not treat Fultz's report as an emergency. He instead left Fultz unmonitored in his cell for a period of time. When Officer Mangold and Officer Jenkins learned from Mr. Taylor that Fultz had cut himself, they responded by standing in the control pod Window laughing and waving a medical request form at Fultz. He then tried to choke himself with a torn strip of T-shirt.

Following this suicide attempt, Fultz saw Dr. Taylor, a psychologist. Dr. Taylor did not obtain emergency medical care for Fultz. He instead told Fultz he was being transferred to a mental health unit. That transfer, however, was later denied. Instead,

Fultz was kept in long-term segregation under conditions that exacerbated his mental decompensation.

On August 30, 2017, around 9:30 a.m., Fultz told Officers Sego and Smith that he was again suicidal and needed to speak with mental health staff. He was left unmonitored in his cell for hours, and around noon, Fultz attempted suicide by cutting his throat. Officers Sego and Smith noticed that Fultz had cut himself at 12:30 p.m. and took him to medical. Despite his suicide attempt, Officers Sego and Smith placed him back in his cell and left him unmonitored. Fultz promptly attempted to kill himself again.

In September of 2017, Fultz told his therapist, Mr. Faenza, that he was again depressed and suicidal and that he needed to be put back on his medication. Mr. Faenza told Fultz that he would set up an appointment with the psychiatrist, Dr. Ikeman. Fultz also completed a health care request form. It was returned to Fultz indicated that an appointment with Dr. Ikeman had been scheduled. Although Mr. Faenza had made Dr. Ikeman aware that Fultz was depressed and suicidal, Dr. Ikeman refused to speak to, evaluate, or prescribe medication for Mr. Fultz's depression.

In October of 2017, Fultz told Officer Rusam[1] he was suicidal and needed to speak to mental health. She said that she would contact mental health. She later returned indicating that she could not get ahold of them but would keep trying. Hours

---

[1] Officer Rusam is not named as a defendant.

passed and, when Officer Rusam returned, she indicated that mental health had left for the day. Fultz then attempted suicide by overdosing on aspirin.

He was hospitalized following this suicide attempt, and he was released on October 22, 2017. While hospitalized, he took Wellbutrin, but it was discontinued when he returned to the prison. Upon his return, Unit Team Manager Mr. Saler[2] told Fultz that Warden Mark Sevier was going to transfer him to a mental health unit, but that transfer was ultimately denied.

Also, on October 22, 2017, Dr. Wala (a psychologist) placed Fultz in an observation cell. Dr. Wala felt that Fultz's issues were behavioral, not psychological, so Fultz was strip searched and placed on a behavioral management plan. She reached this conclusion without actually speaking to Fultz.[3] Dr. Wala's plan involved isolating Fultz with significant sensory deprivation, permitting no activities or distractions or social interactions. Between October 22, 2017, and December 14, 2017, Fultz was not allowed to write or call anyone, and he was not allowed to participate in recreation. Furthermore, he was only permitted to brush his teeth three days a week. These

---

[2] Mr. Saler is not named as a defendant in this action.

[3] Fultz also contends that Dr. Wala's actions were motivated by retaliation. In 2015, Dr. Wala worked with Fultz and, at that time, Dr. Wala learned that Fultz does not approve of interracial relationships. According to Fultz, Dr. Wala is or has been involved in an interracial relationship. Fultz cannot proceed against Dr. Wala on a retaliation claim, however, because he has not identified any protected speech. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Fultz further alleges that, in 2015, Dr. Wala told Fultz that he was a bad person and suggested that if he was going to cut to do it right because she was sick of hearing him cry. Fultz cannot proceed on this claim, however, because it occurred more than two years before he filed his complaint. *See Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 894 (7th Cir. 2001)("Indiana's two-year statute of limitations . . . is applicable to all causes of action brought in Indiana under 42 U.S.C. § 1983.").

conditions further exacerbated his condition and prolonged his suffering. He cut his legs and arms on several occasions while on this behavioral management plan.[4]

At some point during the time-period referenced above, Fultz filed grievances. Mental Health Director Mark Lewvenhagen responded to two of Fultz's grievances by indicating that Fultz was being appropriately followed by therapist Mr. Faenza, did not need to speak to a psychologist, and did not need medication. Yet, Mr. Faenza's recommendations that Fultz be assessed by a psychologist were being disregarded.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical need. *Id.* A medical need is "serious" if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted). The constitution does not specify how

---

[4] Mr. Salyer and Captain Carter disagreed with Dr. Wala's behavioral management plan and asked Dr. Wala to take him off the plan, but the plan remained in place. Mr. Faenza also continued to express disagreement with Dr. Wala's plan and continued to attempt to have Fultz evaluated by a psychologist, but he was unsuccessful.

medical care must be delivered. *Cf. Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012). A

prisoner "is not entitled to demand specific care [nor] entitled to the best care possible."

*Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Fultz has conveyed a very troubling

picture of the manner in which his serious mental health needs were addressed. Giving

him the inferences to which he is entitled, he will be permitted to proceed against

Psychologist Dr. Wala, Psychiatrist Dr. Ikeman, Psychologist Dr. Taylor, Case Manager

Mr. Taylor, Correctional Officer Jenkins, Correctional Officer Mangold, Superintendent

Mark Sevier, Executive Director of Mental Health Mark Lewvenhagen, Correctional

Officer Sego, and Correctional Officer Smith.[5]

Fultz has sued the State of Indiana and Wexford (the private company the prison

has contract with to deliver mental health services to inmates) under the ADA and

Rehabilitation Act.[6] Fultz argues that, as a qualified individual with a disability, he

suffers impairments that substantially limit the operation of neurological and brain

functions, and major life activities including thinking and caring for himself.

Nonetheless, there are certain services, programs, or activities offered by the prison that

---

[5] In addition to the above claims, Fultz asserts that the defendants violated his rights pursuant to the Equal Protection Clause. However, proceeding on different constitutional theories based on the same facts is redundant. *See Williams v. Sn*yder, 150 F. App'x 549, 552 (7th Cir. 2005) ("The remainder of Williams's substantive legal theories . . . warrant little discussion [b]ecause they all involve the same set of facts . . . they would be redundant even if we found that he stated a claim.); *Conyers v. Abitz*, 416 F.3d 580, (7th Cir. 2005) (dismissing claims based on same circumstances because the claim "gains nothing by attracting additional constitutional labels"); and *Graham v. Connor*, 490 U.S. 386, 395 (1989) (Analyzing allegations under the most "explicit source[s] of constitutional protection."). Here, the most explicit constitutional protection is the Eighth Amendment.

[6] While Fultz alleges that the IDOC failed to accommodate his disability under both the Americans with Disabilities Act and the Rehabilitation Act, the relief available to him under the two statutes is coextensive, and his claims will therefore be analyzed only under the Rehabilitation Act. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012).

he could participate in with reasonable accommodations. To state a claim under the

Rehabilitation Act for failure to accommodate his impairments, Fultz must plausibly

allege that: "(1) he is a qualified person (2) with a disability and (3) the Department of

Corrections denied him access to a program or activity because of his disability." *Jaros v.*

*Illinois Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012)(citations omitted). Fultz has

adequately alleged a disability. He further alleges that, between October 22, 2017, and

December 14, 2017, he was not allowed to write or call family, friends, or his attorney,

while non-disabled inmates were not so prohibited. He was denied all recreation, while

non-disabled prisoners received five hours of recreation each week. He was only

permitted to brush his teeth three days a week, while other inmates were permitted to

brush every day. These are, at least arguably, each programs or activities within the

meaning of the Rehabilitation Act. *See Simmons v. Godinez*, No. 16 C 4501, 2017 WL

3568408, at *6 (N.D. Ill. Aug. 16, 2017)("[C]ourts in this Circuit have concluded that

[p]risons must provide beds for inmates, and this is arguably a service within the

meaning of the ADA and/or [Rehabilitation Act].")(quotations and citations omitted);

*Jaros*, 684 F.3d at 672 (noting that the prison's refusal to accommodate a disability that

keeps an inmate from accessing the showers and meals on the same basis as other

inmates violates the Rehabilitation Act). Giving Fultz the benefit of the inferences to

which he is entitled at this stage of the proceedings, he has stated a plausible claim for a

violation of the Rehabilitation Act by the IDOC and Wexford.[7]

---

[7] Fultz also alleges that Wexford maintained a wrongful policy and failed to adequate train and/or supervise its employees charged with delivering mental health services. However, the only policy he has identified is a policy of failing to train. "[I]n the Eighth Amendment context, such claims may only be

Fultz may also be alleging violations of the Rehabilitation Act against each individual defendant, but he cannot proceed under the Rehabilitation Act against individual defendants.[8] Prison employees have no individual liability under the Rehabilitation Act; these claims must be brought against a governmental entity. *Jaros*, 684 F.3d at 672 ("[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or ADA."); *see* 29 U.S.C. § 794a(a)(1)(incorporating procedures from the Civil Rights Act of 1964, including procedures set forth in 42 U.S.C. 2000e-16) and 42 U.S.C. § 2000e-16(c)("head of the department, agency, or unit, as appropriate, shall be the defendant.").

Fultz also alleges that the IDOC and Wexford denied him appropriate screening and treatment of his emergency mental health needs in violation of the Federal Emergency Medical Treatment and Active Labor Act. The statute that Fultz relies upon, however, requires hospitals that have emergency department to provide stabilization and emergency treatment to those who present themselves for treatment. 42 U.S.C.A. § 1395dd. It does not require the IDOC or Wexford to deliver Fultz to a hospital for such treatment. The obligation to provide constitutionally adequate medical care stems from the Eighth Amendment, and Fultz's Eighth Amendment claims have already been addressed by the court.

---

maintained against a municipality." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (*citing Farmer v. Brennan*, 511 U.S. 825, 841 (1994)). Because Wexford is not a municipality, Fultz cannot proceed against Wexford on a claim that they had an unconstitutional policy of failing to adequately train staff.

[8] Fultz indicates in his complaint that he is asserting "[d]isability rights claims against all Defendants." (ECF 1 at 14.)

Fultz paid the filing fee in this case and is not proceeding in forma pauerpis. Accordingly, he is not entitled to have service performed on his behalf free of charge pursuant to 28 U.S.C. § 1915(d). However, as a courtesy, the United States Marshal's Service will serve the defendant if Fultz pays the costs of service. The United States Marshal's Service has $288.00 ($24.00 per defendant). If Fultz desires the assistance of the United States Marshal's Service, he may mail this sum to United States Marshal's Service, 204 S. Main Street., South Bend, Indiana 46601. Fultz may also make his own arrangement for service of process, if he so chooses.

For these reasons, the court:

(1) GRANTS Michael Fultz leave to proceed against the Indiana Department of Correction and Wexford for compensatory and punitive damages on his claim that they failed to accommodate his disability so that he could enjoy communication with family, friends, and his attorney, participate in recreation, and brush his teeth daily between October 22, 2017, and December 14, 2017, in violation of the Rehabilitation Act;

(2) GRANTS Michael Fultz leave to proceed against Psychologist Dr. Wala, Psychiatrist Dr. Ikeman, Psychiatrist Dr. Taylor, Case Manager Mr. Taylor, Correctional Officer Jenkins, Correctional Officer Mangold, Superintendent Mark Sevier, Executive Director of Mental Health Mark Lewvenhagen, Correctional Officer Sego, and Correctional Officer Smith in their individual capacity for compensatory and punitive damages for deliberate indifference to his serious mental health needs between July of 2017 and December 21, 2018, in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DIRECTS Michael Fultz to either send $288.00 to the United States Marshal's Service, 204 S. Main Street., South Bend, Indiana 46601, or to make other arrangements to serve the Indiana Department of Correction, Wexford, Psychologist Dr. Wala, Psychiatrist Dr. Ikeman, Psychiatrist Dr. Taylor, Case Manager Mr. Taylor, Correctional Officer Jenkins, Correctional Officer Mangold, Superintendent Mark Sevier, Executive Director of Mental Health Mark Lewvenhagen, Correctional Officer Sego, and Correctional Officer Smith; and

(5) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), the Indiana Department of Correction, Wexford, Psychologist Dr. Wala, Psychiatrist Dr. Ikeman, Psychiatrist Dr. Taylor, Case Manager Mr. Taylor, Correctional Officer Jenkins, Correctional Officer Mangold, Superintendent Mark Sevier, Executive Director of Mental Health Mark Lewvenhagen, Correctional Officer Sego, and Correctional Officer Smith to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on December 2, 2019

       /s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT