UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL LEE FULTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:19-CV-557 |
| | ) |
| STATE OF INDIANA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **OPINION AND ORDER**

Plaintiff Michael Lee Fultz is a prisoner at Westville Correctional Facility in Indiana. Mr. Fultz indicates that he suffers from severe mental health conditions that have led him to attempt suicide on several occasions. He alleges that numerous defendants, both correctional staff and employees of Wexford of Indiana ("Wexford"), the prison's health provider, failed to provide him with proper care when he presented as suicidal. He sued the Indiana Department of Health and Wexford as well as a number of related individuals, including Dr. Monica Wala, Dr. Barbara Eichman, and Dr. Eddie Taylor, asserting violations of his Eighth Amendment right to constitutionally adequate medical care and his right to disability accommodations under the Rehabilitation Act. Wexford and the individual medical defendants ("Defendants") moved for summary judgment, arguing that Mr. Fultz failed to exhaust his administrative remedies. Since filing their motion for summary judgment, Defendants have conceded that Mr. Fultz exhausted administrative remedies with regard to Dr. Eichman and Dr. Wala [DE 62 p .2]. As such, the Court denies the motion for summary judgment as to those two defendants. In addition, the Plaintiff concedes in his reply that he did not exhaust administrative remedies against Wexford [DE 58 p.6]. Thus, the Court grants the motion for summary judgment as to Wexford. This leaves only exhaustion with regard to the Plaintiff's claims against Dr. Taylor to be addressed

here. In order to address this matter, the Court first addresses Defendants' motion to strike portions of Plaintiff's affidavit [DE 63].

## I. FACTUAL BACKGROUND

Mr. Fultz reports suffering from major depressive affective disorder, borderline personality disorder, antisocial personality disorder, paranoid personality disorder, and suicidal ideations [DE 60-1 ¶ 4]. As a result of these conditions, he experienced repeated suicidal impulses while housed in segregation at Westville Correctional Facility between July of 2017 and December of 2018. Mr. Fultz states that he attempted suicide multiple times during that period. Following a suicide attempt on August 7, Mr. Fultz saw Dr. Taylor, a psychologist employed at the facility through Wexford. During the appointment, Dr. Taylor told Mr. Fultz that he would be transferred to a mental health unit for further care. The transfer was later denied, and Mr. Fultz remained in segregation [DE 60-1 ¶ 7, 8].

Mr. Fultz asserts that after his transfer was denied, he filed two grievances, the first one informal and the second one formal, against Dr. Taylor for failing to provide adequate mental health treatment and not enacting the transfer [DE 60-1 ¶ 8, 9]. The Defendants maintain they have no evidence in their files that Mr. Fultz filed any grievances against Dr. Taylor [DE 52-1 ¶ 38, 39]. Mr. Fultz asserts he did not get a response to his initial formal grievance against Dr. Taylor, leading him to follow up by sending a request slip to Mr. Cambe, the facility's grievance specialist, asking why no one had responded [DE 60-1 ¶ 10]. Mr. Fultz did not receive a reply from Mr. Cambe either. He then chose to file a second formal grievance against Dr. Taylor, this time handing it directly to Case Manager Jerome Taylor ("Mr. Taylor"),[1] who promised to turn it in. After five days went by without a response, Mr. Fultz asked Mr. Taylor about the lack of a

---

[1] Two of the defendants have the last name Taylor. Case Manager Jerome Taylor, referred to here as "Mr. Taylor," is distinct from the moving party Dr. Taylor.

response. Mr. Taylor told Mr. Fultz he had turned the form in and there was nothing more he could do [DE 60-1 ¶ 11, 12]. Mr. Fultz then attempted to file a formal grievance once more, this time sending it via mail bag to Superintendent Mark Sevier with a letter describing his previous attempts to file. When he did not receive a response from Mr. Sevier, Mr. Fultz gave up, unsure how else to proceed [DE 60-1 ¶ 13, 14].

Prior to and after the incidents described here, Mr. Fultz sought psychological and psychiatric care from other members of the Wexford staff. His claims against Dr. Wala and Dr. Eichman stem from separate incidents.

## II. MOTION TO STRIKE

The Court first addresses Defendants' motion to strike portions of Mr. Fultz's affidavit (DE 58-1, amended to include signature as DE 60-1). The Defendants argue that paragraphs 8 through 11 as well as paragraph 13, in which Mr. Fultz describes submitting grievance documents to Mr. Taylor, constitute inadmissible hearsay. They also argue that the cited paragraphs violate the Best Evidence Rule because Mr. Fultz should be required to produce the grievance documents he describes as evidence rather than testify to their contents.

Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c). When used for purposes other than to prove the truth of the matter asserted, documents or testimony containing out-of-court statements are still admissible subject to the remaining rules of evidence. And testifying to the existence of a document is different than using the document to prove the truth of the matter asserted therein. The truth of the matter asserted in a grievance document is the substance of the grievance itself. See e.g. *Venus v. Goodman*, 556 F. Supp. 514, 518 (W.D. Wis. 1983) (plaintiff's statements describing his unsuccessful attempts to obtain medical assistance were not hearsay because they were offered to show that he had made

them, not to prove the need for medical assistance stated within them). Similarly, here, Mr. Fultz's affidavit describes the grievance documents not for the truth of what they asserted—that Dr. Taylor did not afford him proper treatment—but instead, to describe his actions of filling them out and attempting to turn them in as part of exhausting his available administrative remedies through the grievance system. As such, sections 8 through 11 and 13 of Mr. Fultz's affidavit are not hearsay.

Defendants also argue that Mr. Fultz's affidavit violates the Best Evidence Rule. While the Best Evidence Rule requires "an original writing . . . in order to prove its content," Fed. R. Evid. 1002, "an event may be proved by nondocumentary evidence, even though a written record of it was made." Fed R. Evid. 1002 Advisory Committee Notes. Here, Mr. Fultz's affidavit was presented as proof of his first-hand knowledge that he filled grievance documents out and attempted to submit them, not in order to prove the contents of what he had written in the grievances. Therefore, the statements do not violate the Best Evidence Rule. *Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648-49 (7th Cir. 2006) ("If a witness's testimony is based on his first-hand knowledge of an event as opposed to his knowledge of the document, however, then Rule 1002 does not apply.").

Defendants further assert that paragraph 12 of Mr. Fultz's affidavit, in which Mr. Fultz asserts that "Jerome Taylor said he had turned it in and there was nothing else he could do," is inadmissible hearsay. Again, a statement will only be excluded on hearsay grounds when it is offered to prove the truth of the matter asserted. It does not constitute hearsay if used for other purposes, such as to illustrate a misrepresentation about the grievance process. Here, paragraph 12 would be hearsay if it was being offered for and considered as proof that Mr. Taylor did in fact submit the form, but that is not the purpose for which Mr. Fultz presents it or the way in

which the Court interprets it. Mr. Fultz states that the paragraph is meant only to prove that he had a conversation with his case manager that led him to believe he had properly filed a grievance [DE 64 p. 3] and the Court interprets it only in that narrow, non-hearsay way.

Defendants' motion to strike portions of Mr. Fultz's affidavit is thus denied. As such, Mr. Fultz's recollections regarding the grievances he tried to file and what Mr. Taylor told him are admissible and can be considered for purposes of the parties' summary judgment arguments.

### III. EXHAUSTION

The Court finds that there is a genuine dispute of fact as to whether Mr. Fultz submitted any grievances against Dr. Taylor as well as whether Mr. Fultz properly exhausted the available remedies with regard to his grievance against Dr. Taylor. Accordingly, the Court denies the Defendants' motion for summary judgment.

#### A. Standard of Review

Summary judgment is proper when the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where the factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable

inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999).

## B.  Discussion

The Prison Litigation Reform Act requires a prisoner to exhaust his administrative remedies before bringing suit. 42 U.S.C. § 1997e(a) ("No action shall be brought . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). In order to exhaust available administrative remedies, "prisoners must take advantage of all procedures that are actually available," and courts "look to state law to see what remedies meet that test." *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 831 (7th Cir. 2020). In particular, the prisoner must strictly follow the specific procedures established in the prison's grievance policy to meet the exhaustion requirement. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). The Seventh Circuit has taken a strict approach to compliance with exhaustion requirements. *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011). One caveat, however, is that the administrative remedies must in fact be "available." § 1997e(a); *Ross v. Blake*, 136 S. Ct. 1850, 1858–60 (2016). "A remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F. 3d 804, 809 (7th Cir. 2006). Failure to respond is one way that a remedy can be made unavailable. *Lewis v. Washington*, 300 F.3d 829, 833-834 (7th Cir.2002) ("We refuse to interpret the PLRA 'so narrowly as to ... permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" (quoting *Goodman v. Carter*, No.2000 C 948, 2001 WL 755137, at *3 (N.D. Ill. July 2, 2001)).

Exhaustion is an affirmative defense, and a defendant invoking that defense bears the burden of establishing both that the administrative remedies were available and that the prisoner

6

failed to exhaust them. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018). When disputes of fact arise as to whether the plaintiff exhausted or whether administrative remedies were in fact available, the court is required to hold a hearing to resolve those disputes. *Pavey v. Conley*, 544 F. 3d 739, 742 (7th Cir. 2008).

Here, the parties dispute the availability of the full grievance process with regard to Mr. Fultz's grievance against Dr. Taylor. The relevant process is governed by Indiana Department of Corrections Policy and Administrative Procedure 00-02-301, Offender Grievance Process. This process requires a prisoner to attempt an informal resolution, to file a formal grievance, file an appeal with the Warden or Warden's designee, and file a second appeal with the Offender Grievance Manager. To meet the exhaustion requirement, prisoners must proceed through each step within the time frames allotted by prison policy. The process itself contains provisions for how a prisoner should proceed if he does not receive a response to his grievance: he should write to the Offender Grievance Specialist to alert him of this fact and retain a copy of the written notice. If a prisoner fails to properly follow the steps of the grievance process, "prison administrative authority can refuse to hear the case, and the inmate's claim can be indefinitely unexhausted." *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006).

The Defendants assert that according to prison records, Mr. Fultz did not file any informal or formal grievances that were accepted or appeals related to care provided by Dr. Taylor between August 7, 2017 and January 9, 2019. Mr. Fultz in turn argues that the lack of responses to his repeated efforts to file his grievance rendered the process unavailable. The Court will examine each required step of the grievance process in turn and the actions Mr. Fultz asserts that he took to fulfill the requirements.

The first step of the grievance process requires the inmate to file an informal complaint [DE 52-1 ¶ 9]. Mr. Fultz asserts—and for summary judgement purposes, the Court accepts—that he filed such a complaint against Dr. Taylor for not providing adequate mental health treatment and not transferring him to a mental health unit with programs and services that would accommodate his mental illness [DE 60-1 ¶ 8]. If unable to resolve the complaint informally, the inmate is to file a formal grievance [DE 52-1 ¶ 10]. Mr. Fultz did this [DE 60-1 ¶ 9]. If the inmate does not receive a response within 5 business days, he is to alert the Grievance Specialist to this fact, retaining a copy of the notice [DE 52-1 ¶ 11]. Mr. Fultz asserts that he sent a request slip to Mr. Cambe, the Grievance Specialist, satisfying this requirement but does not state that he kept a copy of his request [DE 60-1 ¶ 10].

The next step in the process would be for the Grievance Specialist to investigate. However, Mr. Fultz asserts that he never received a response from Mr. Cambe and therefore he could not have known whether his grievance had been investigated [DE 60-1 ¶ 10]. The only portion of the procedure applicable to a situation like this is the portion that instructs, "If the offender receives no response within twenty (20) business days of being investigated by the facility Offender Grievance Specialist, the offender may appeal as though the grievance is denied" [DE 52-1 ¶ 19]. Here, there is no evidence that any investigation was ever made—making it unclear whether Mr. Fultz should have filed an appeal as an appropriate next step when he never heard back about his formal complaint and whether it had led to an investigation.

Mr. Fultz did not file an appeal. Instead, he filed another formal grievance, this time by handing the form to Mr. Taylor [DE 60-1 ¶ 11]. Once again, Mr. Fultz received no response within the five-day period [DE 60-1 ¶ 12]. He asked Mr. Taylor whether he had turned the grievance in and Mr. Taylor led Mr. Fultz to believe the grievance was properly filed by

8

confirming he had turned it in, stating "there was nothing else he could do." *Id*. In light of the second instance of a failure to respond, Mr. Fultz pursued one further route, sending a third grievance form via mail bag to Westville Superintendent Sevier with a letter explaining his prior attempts to grieve the issue [DE 60-1 ¶ 13]. After receiving no response to this third grievance, Mr. Fultz gave up [DE 60-1 ¶ 14].

Mr. Fultz points to *Dole v. Chandler* in arguing that the lack of response rendered the grievance process unavailable. 438 F.3d 804 (2006). In *Dole*, the prisoner placed his grievance in a compartment in his cell to be picked up. There, officials acknowledged receipt of the document, but it never reached its intended recipient. The Court determined that because Mr. Dole took the appropriate steps but the prison staff did not, the grievance process was rendered unavailable and therefore Mr. Dole had exhausted all available remedies by attempting to file. *Dole* suggests that the central question regarding availability is whether the misstep was the fault of the prison or of the prisoner. Defendants argue that *Dole* is distinguishable because in that case, prison officials acknowledged receipt of the grievance, so there was no possibility that Dole lied about his timely filing. In the present case, they argue, Mr. Fultz has presented nothing but his own statements to support his contention that he timely filed his grievances [DE 62 p. 6]. However, that argument fails at this stage because the Court construes the presented facts, including Mr. Fultz's assertions, in the light most favorable to the non-moving party.

The prison's failures to respond to Mr. Fultz's repeated attempts to file a grievance create a genuine issue of material fact as to the availability of the process. While the policy clearly indicates that an offender should follow up a lack of a response to an initial grievance with a notification and instructs that a lack of a response after an investigation is to be treated as a denial, the language of the policy does not provide clear instructions for what an offender should

do if he never receives any responses despite repeated efforts to file. Mr. Fultz attempted to file his grievance in three different ways, including by handing it to a correctional staff member, Mr. Taylor, who told Mr. Fultz that he had turned it in. The subsequent silence on the part of the prison qualifies as a lack of response to properly filed grievances in a manner that forecloses the availability of administrative remedies for Mr. Fultz. *See Dole*, 438 F.3d at 809 ("if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting"). As such, summary judgment for Mr. Taylor is inappropriate.

## IV.  CONCLUSION

For those reasons, the Court DENIES the motion for summary judgment on exhaustion as to Dr. Taylor, Dr. Eichman, and Dr. Wala [DE 50] and GRANTS the motion for summary judgment as to Wexford. The Court also DENIES the motion to strike portions of Plaintiff's affidavit [DE 63] and GRANTS the unopposed motion to amend Plaintiff's affidavit to include affiant's signature [DE 60]. Unless the Defendants elect to withdraw their exhaustion defense, it will be necessary to hold a hearing pursuant to *Pavey* to resolve that defense. The Defendants are therefore ORDERED to file a notice within fourteen days of this Order advising the Court whether they elect to withdraw their exhaustion defense or proceed with a *Pavey* hearing.

SO ORDERED.

ENTERED:  November 17, 2020

/s/ JON E. DEGUILIO
Chief Judge
United States District Court