UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL LEE FULTZ,

    Plaintiff,

    v.

MR TAYLOR, et al.,

    Defendants.

Case No. 3:19-CV-557 JD

## OPINION AND ORDER

    Michael Fultz brings this suit against the Indiana Department of Corrections ("IDOC") and several prison employee defendants, alleging that changes to his conditions of confinement violated the Rehabilitation Act and that Defendants were deliberately indifferent to his suicide attempts. Mr. Fultz's § 1983 deliberate indifference claim states his Eighth Amendment rights were violated by the untimely and inadequate response to his risk of suicide by several correctional officers and mental health caseworkers. Wexford of Indiana, LLC and some of the mental healthcare defendants were dismissed pursuant to a stipulation (DE 117). The state defendants—correctional officers Jessica Rak (neé Jenkins), Stephen Sego, Roosevelt Smith, mental health caseworker Jerome Taylor, and IDOC, (hereafter, "Defendants")—moved for summary judgment (DE 99), arguing that the deprivations challenged under the Rehabilitation Act were medical decisions, that Defendants were not deliberately indifferent, and that Defendants were entitled to qualified immunity. The Court GRANTS Defendants' motion for summary judgment on Mr. Fultz's § 1983 claims except those against Officer Rak, as her taunting of Mr. Fultz displayed deliberate indifference clearly forbidden by law at the time of the violation. The Court also DENIES the motion for summary judgment on Mr. Fultz's

Rehabilitation Act claim, as the facts do not support IDOC's entitlement to a judgment as a matter of law. The Court further finds Mr. Fultz's ADA claim, which is duplicative of his Rehabilitation Act claim, has been abandoned because Mr. Fultz failed to defend it in response to the motion for summary judgment.

### A. Facts

This suit concerns several suicide attempts by Mr. Fultz in the summer and fall of 2017 and the ensuing response by employees of the prison where he was incarcerated. Mr. Fultz was housed at Westville Correctional Facility during the relevant time period and lived in the Westville Control Unit, a disciplinary housing unit within the prison. Prisoners who live in the Control Unit are allowed limited recreation and cannot possess the same property as prisoners in the general population. Mr. Fultz has a diagnosed history of depression and was able to see a therapist at least briefly each week and upon request, but he still experienced severe depression and hopelessness. Mr. Fultz began requesting medication to treat his depression in July 2017, but his repeated requests were denied. Mr. Fultz was also hoping to be transferred out of the Control Unit to somewhere where he could receive greater mental health treatment and engage in more activities. In 2017, he was told he would not be transferred to his desired mental health facility. At that time, he believed there was no definitive end to his time in the Control Unit.

On the morning of August 7, 2017, Mr. Fultz told Officer Rak that he needed to see someone from mental health because he was thinking of hurting himself. Officer Rak did not summon any help. Distressed after being ignored, Mr. Fultz then began to cut his leg using the metal wrap from a battery; because Mr. Fultz is not allowed to have razorblades, he used what was available to "saw" at his leg. When Defendant Mr. Taylor approached, Mr. Fultz told him what he had

done. Mr. Taylor conversed with three other inmates before reporting the cut to Officer Rak. Officer Rak then waived a healthcare request slip around, danced, and laughed at Mr. Fultz. Other prisoners commented that Officer Rak was making fun of Mr. Fultz. Discouraged by this series of events, Mr. Fultz tore a strip of cloth off his t-shirt, tied it around his neck, and pulled it until he briefly fell unconscious. Other inmates alerted Officer Rak to what was happening, and she responded by signaling for emergency medical help. Mr. Fultz was taken to the infirmary, where he was x-rayed. It was determined he did not have any bone fractures. Though the exact timeframe of these events is not apparent, the record shows Mr. Fultz received medical care around noon. As a result of this incident, Mr. Fultz was placed on suicide watch for about a week. He was later released. He also received a disciplinary report of conduct for disfigurement. After this incident, Mr. Fultz began seeing another therapist and was able to see a therapist each time he expressed feeling suicidal.

On August 30, 2017, Mr. Fultz told Defendant Officers Sego and Smith that he was having suicidal thoughts. The officers told Mr. Fultz they would attempt to have mental health speak with him. Several hours elapsed with no care, and Mr. Fultz began to feel hopeless. He took a piece of metal and began sawing at his neck. Correctional officers saw Mr. Fultz doing this and took him to the infirmary, after which he was released back into his cell and was not put on suicide watch. Several hours later, Mr. Fultz obtained a razor blade and cut both his wrists. Mental health workers observed this and intervened. While the exact timeline is unclear, the final report for both incidents was completed at 2:45 P.M. Mr. Fultz was again put on suicide watch for a period and received a disciplinary report for self-mutilation. Throughout September 2017, Mr. Fultz saw mental health and a therapist but was not put on any medication for depression.

On October 20, 2017, Mr. Fultz was again experiencing suicidal thoughts. He told a non-defendant officer that he needed to speak to someone from mental health. That officer attempted to summon a mental health worker, but eventually told Mr. Fultz that everyone was gone for the day. Hopeless, Mr. Fultz then swallowed almost an entire bottle of aspirin. A correctional officer saw the incident, and Mr. Fultz was taken to the emergency room. After returning from the hospital, Mr. Fultz was put on suicide watch and a behavior modification plan was instituted. The documentation of the behavioral modification plan explicitly ties the plan to Mr. Fultz's suicide attempt. Though the plan has multiple phases, the documentation provides that the most restrictive phase consists of Mr. Fultz "remain[ing] in a modified stripped cell under close video observation with safety smock, meals handed to [him] from a paper bag (no plastic, no plastic bags, no Styrofoam and no utensils), safe sleeping bag and monitored showers for a period of two weeks. [He] will continue to have a companion outside [his] cell door monitoring activity." (DE 108-5 at 8.) In addition to the restrictions outlined in the formal plan, Mr. Fultz was also denied access to mail and phone calls and was limited to brushing his teeth only while in the shower, which was restricted to three times a week. The mental health team did not prescribe these further restrictions, and other prisoners are regularly afforded access to these services. After a period of good behavior, Mr. Fultz was removed from the plan.

B.  **Legal Standards**

Summary judgment is warranted when the evidence viewed in a light most favorable to the non-moving party presents no genuine issue of material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*, 908 F.3d 290, 295 (7th Cir. 2018). When deciding a motion for summary judgment, all disputed issues of fact are to be resolved in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. The Court may not make credibility determinations or weigh the evidence when ruling on a motion for summary judgment. *Reinebold v. Bruce*, 18 F.4th 922, 927 (7th Cir. 2021). "To overcome a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008).

### C. Discussion

For the reasons stated below, the Court denies summary judgment on Mr. Fultz's Rehabilitation Act claim. The Court grants summary judgment on Mr. Fultz's § 1983 claims against all parties except Officer Rak, finding that Mr. Fultz failed to respond to Defendants' qualified immunity argument and thereby waived the argument. The Court declines to grant summary judgment on the § 1983 claim against Officer Rak because the qualified immunity argument is frivolous when considering her conduct, and therefore, it does not merit response.

### *(1) Mr. Fultz's Rehabilitation Act claim survives.*

The Court declines to grant summary judgment because IDOC has not shown there is no dispute of material fact such that it is entitled to summary judgment on Mr. Fultz's Rehabilitation Act claim. Mr. Fultz's Rehabilitation Act claim states he was denied access to hygiene and recreation on the basis of his mental health disability. IDOC primarily argues Mr. Fultz cannot

5

challenge any deprivations that occurred because they were prescribed by the behavioral management plan. This argument is not persuasive because it misconstrues the nature of Mr. Fultz's claim and because it is not supported by the facts on summary judgment.[1]

Mr. Fultz claims he was deprived of mail, phone calls, and basic hygiene because of his severe depression, manifesting in his October suicide attempt, in violation of the Rehabilitation Act. "To state a claim under the Rehabilitation Act, [a plaintiff] need only allege that (1) he is a qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Prisoners are protected under the Americans with Disabilities Act and the Rehabilitation Act. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (prisoners are protected under ADA); *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (analysis of the claims under the ADA and Rehabilitation Act "is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons"). Although incarceration is not a program or activity, recreational activities, medical services, educational and vocational programs, and other benefits provided by the prison qualify for protection under the statute. *Yeskey*, 524 U.S. at 210. "Fundamentals" such as mobility, hygiene, and medical care are included in this definition of programs and activities. *United States v. Georgia*, 546 U.S. 151, 157 (2006). Leisure or recreation activities also qualify. *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012); *Bos. v. Dart*, No. 14 CV 8680, 2015 WL 4638044, at *3 (N.D. Ill. Aug. 4, 2015). The parties have not disputed that Mr. Fultz qualifies as an

---

[1] Mr. Fultz's ADA claims are deemed abandoned, as they were not mentioned in any way in his response brief. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597 (7th Cir. 2003) (finding claim abandoned where plaintiff "failed to delineate" his claim in opposition to summary judgment). Given that the claims are coextensive, and only one recovery is allowed, this does not impact Mr. Fultz's ability to recover. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012).

individual with a disability, and the facts show he was diagnosed with depression that caused significant functional impairment. (DE 108-5 at 4–5.) The parties also do not dispute that the alleged deprivations (deprival of mail, phone calls, regular tooth brushing, and showers) occurred subsequent to and as a result of Mr. Fultz's October 20, 2017, suicide attempt. Thus, the parties dispute only the third prong: whether denial of access to a program or activity occurred because of Mr. Fultz's disability.

   (a)  *This is not a medical malpractice claim.*

Defendants argue that Mr. Fultz has no claim because his claim represents simple disagreement with his mental health behavioral modification plan, and medical malpractice claims are not actionable under the statute. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). The Court finds Defendants' argument unpersuasive because it mischaracterizes Mr. Fultz's cause of action. It is true that medical malpractice is not a basis of liability under the Rehabilitation Act, but a claim that a prisoner was denied access to services, including medical services, is a distinctly different claim than a claim that he was not properly treated. *See Bryant*, 84 F.3d at 249 (distinguishing a claim for incompetent treatment of disability from complaint "of being excluded from some prison service, program, or activity"). Several courts in our circuit have found that if a prisoner is moved to a facility or otherwise deprived of benefits other inmates normally receive as a result of his mental health disability, he may bring a claim under the Rehabilitation Act. *See Corbin v. Indiana*, No. 3:16CV602-PPS/MGG, 2018 WL 1920711, at *4 (N.D. Ind. Apr. 23, 2018) (plaintiff stated claim where he was deprived of services after being put in solitary following self-harm); *Andrews v. Rauner*, No. 3:18-CV-1101, 2018 WL 3748401, at *5 (C.D. Ill. Aug. 6, 2018) (same). Mr. Fultz claims that he was denied access to hygiene,

7

mail, and phone calls, which are all considered qualifying prison benefits. The heart of Mr. Fultz's claim is not that his mental health was treated negligently; it is that he was deprived of basic hygiene and communications as punishment for his suicide attempts, which are a manifestation of his mental health disability. This kind of claim does not sound in medical malpractice or insufficient treatment and is therefore actionable under the Rehabilitation Act. *See Andrews*, 2018 WL 374840, at *5.

Sound policy rationale exists for the distinction between medical malpractice and deprivation of services claims under the Rehabilitation Act. Courts in our circuit have been skeptical of similar arguments blaming the mental health providers in the context of prisoner ADA or Rehabilitation Act claims, and rightly so. *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1071 (N.D. Ill. 2016) (refusing to shift blame where claim arose from housing assignment, not medical malpractice). IDOC's argument amounts to the following: the team of mental health providers instructed that Mr. Fultz should be restricted from basic hygiene because such restriction will incentivize him to behave better. If he stymies his problem behaviors—which chiefly consist of attempting to commit suicide—he can earn back the privilege of brushing his teeth. This reasoning is illogical, to say the least, unless his "attempts" at suicide are feigned. And the argument is also backward in a more global sense: one can conceive of many discriminatory modifications to an inmate's conditions that might be pretextually explained as incentivizing behavioral change. It would be troubling if the state were able to wield the behavioral management plan as a talisman capable of blessing these otherwise unpermitted actions.

Even if IDOC were able to show Mr. Fultz's behavioral plan limited toothbrushing, an argument for which they have not yet marshalled support,[2] such a showing would not necessarily render Mr. Fultz's claim a forbidden medical malpractice claim. Though *Bryant* clearly states the Rehabilitation Act does not provide a remedy for medical malpractice, one might consider discriminatory deprivations actionable even if they were included in the plan because some treatment decisions are so egregious that they rise above the level of malpractice. *Cf. Petties v. Carter*, 836 F.3d 722 (7th Cir. 2016), as amended (Aug. 25, 2016) (in the Eighth Amendment context, a treatment decision may be such a substantial departure from accepted professional judgment, practice, or standards that it demonstrates an absence of professional judgment rising above the level of mere malpractice). Accordingly, *Bryant* does not stand for the proposition that otherwise actionable deprivations may always be lawfully endorsed by a medical treatment plan, and Mr. Fultz has not brought a forbidden medical malpractice claim.

*(b) A genuine dispute of material fact exists.*

With this argument dispensed, the only material question of fact to resolve at trial is whether the deprivations occurred as a result of Mr. Fultz's disability. *See Williams v. Illinois*, No. 3:19-CV-739-MAB, 2020 WL 4201188, at *4 (S.D. Ill. July 22, 2020) (distinguishing case at bar from those where plaintiff's deprivations were due to his mental illness). A deprivation is not actionable under the Rehabilitation Act unless the plaintiff is deprived "solely by reason of" his disability." *Alexander v. Choate*, 469 U.S. 287, 290 (1985). Therefore, the operative question at trial becomes why IDOC instituted the deprivations. While Mr. Fultz alleges that his suicide

---

[2] Though IDOC includes citations to the record in its statement of facts, these citations do not support the propositions for which they are cited.

attempts were genuine and motivated by depression, IDOC argues they were designed to seek attention from mental health staff and motivate a transfer to a different facility. If IDOC's contentions are true, Mr. Fultz would not have been subject to deprivations solely by reason of his mental health.[3] Certainly, Mr. Fultz faces a steep climb to recover at trial: he must persuade the factfinder that the deprivations were not motivated *in any part* by his behavioral issues, and that he was the victim of *intentional* discrimination. *See Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 484 (7th Cir. 2019) (explaining the "solely by reason of" standard). However, at this juncture, a credibility determination would be required to determine whether Mr. Fultz was moved as a reason of his disability, and the Court cannot properly make such a determination on summary judgment. *Walker v. Sheahan*, 526 F.3d 973, 980 (7th Cir. 2008). The facts of this case are capable of more than one construction; like shifting tea leaves, upon drawing inferences they appear to reveal what the viewer seeks to be true. *Contra Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (noting the narrowness of the court's grant of summary judgment: "Today's case presents a clear instance of an insincere suicide threat from an inmate wanting nothing more than attention. But tomorrow's case may entail a fact pattern nowhere near as straightforward."). It seems plausible that an inmate with severe depression would find ongoing detention in the Control Unit hopeless and being punished for the manifestations of that hopelessness would worsen his condition, causing him to attempt to end his life. It also seems plausible an inmate might pretend to be more severely mental ill than he truly was if he thought he could obtain more favorable housing by doing so. But whose version of events to believe is a question for the jury. As such, the Court declines to grant summary judgment on Mr. Fultz's Rehabilitation Act claim.

---

[3] Mr. Fultz's Rehabilitation Act claim relies on the genuineness of his suicide attempts. He has not claimed attention-seeking behavior is a symptom of his disabilities.

### *(2) Mr. Fultz's § 1983 claim is waived except to Officer Rak.*

Defendants are entitled to summary judgment on Mr. Fultz's Eight Amendment claims against all Defendants except Officer Rak because Mr. Fultz did not brief the issue of qualified immunity in his response and accordingly has waived the nonfrivolous argument. *See Puffer v. Allstate Ins. Co*., 675 F.3d 709, 718. (7th Cir. 2012) (arguments are waived if they are "underdeveloped, conclusory, or unsupported by law"). To be clear, qualified immunity is not briefed *at all* in Mr. Fultz's response to summary judgment. The required briefing is not just deficient; it is totally absent. Failure to respond to an argument raised on summary judgment waives the argument and abandons the claim*. Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (affirming dismissal of claim where plaintiff failed to respond to statute of limitations argument and thereby waived the argument); *Donelson v. City of Chicago*, 272 F. Supp. 2d 717, 726 (N.D. Ill. 2003) (claim abandoned where no serious effort was made to respond to defendant's argument on summary judgment); *Oak Brook Hotel Co. v. Tchrs. Ins. & Annuity Ass'n of Am.*, 846 F. Supp. 634, 641 (N.D. Ill. 1994) (entering summary judgment where there was no effort to defend the claim).

While any failure to respond on summary judgment waives a nonfrivolous argument, the failure is especially glaring here because qualified immunity places a significant burden on the plaintiff. "On a qualified immunity claim, the court confronts two questions: (1) whether the plaintiff's allegations make out a deprivation of a constitutional right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Ault v. Speicher*, 634 F.3d 942, 946 (7th Cir. 2011). It is the plaintiff's burden to show that the constitutional right was clearly established. *Landstrom v. Illinois Dep't of Child. & Fam. Servs*., 892 F.2d 670, 676 (7th

11

Cir. 1990). He can do this in one of two ways: by pointing to precedent clearly establishing the constitutional right or by "showing that the violation was so obvious that a reasonable person would have known of the unconstitutionality of the conduct at issue." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1022 (7th Cir. 2000). If the plaintiff fails to make such a showing, the defendant will prevail. *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017).

The Court's independent review indicates Defendants' qualified immunity argument is not frivolous as to Defendants other than Officer Rak. *See Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (failure to file a brief would not mandate reversal if entire appeal was frivolous).[4] Mr. Fultz claims Defendants were deliberately indifferent to his expressions of suicidal ideation and pleas for help, but it was not clearly established at the time of the violation that Defendants' behavior constituted deliberate indifference. Deliberate indifference requires both an objectively serious harm and deliberate indifference to the risk of said harm. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021). Substantial risk of suicide is an objectively serious harm, satisfying the first prong. *Matos ex rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003). As to the second prong, "[d]eliberate indifference requires a showing of more than mere or gross negligence, but less than the purposeful or knowing infliction of harm." *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006). The Seventh Circuit has "characterized the required showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Id*. Prison officials do not act with deliberate indifference if they take reasonable preventative steps to address an inmate's substantial risk of suicide. *Est. of Novack ex*

---

[4] The Court notes this inquiry is now two steps removed from the underlying question of whether a constitutional violation occurred. Although the degree of abstraction is a bit discomforting, none of these questions present particularly close calls, and the Court is not convinced it would reach a different result if it decided this motion for summary judgment on substantive constitutional grounds.

*rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 530 (7th Cir. 2000). For the most part, Mr. Fultz's claims of deliberate indifference are comprised of delays of several hours in receiving medical care and Defendants' ongoing refusal to prescribe Mr. Fultz medication or transfer him to other facilities.

*(a) The argument is not frivolous because the illegality of the delays is not obvious.*

The Court will begin by analyzing the delay in assisting Mr. Fultz each time he expressed suicidal ideation. "In some cases, even brief, unexplained delays in treatment may constitute deliberate indifference." *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015). Delays of mere hours can suffice to sustain a claim if circumstances are sufficiently severe. *See Lewis v. McLean*, 864 F.3d 556 (7th Cir. 2017) (delay of 1.5 hours significant where severe back pain rendered plaintiff unable to stand or move). Most aptly, in *Sanville v. McCaughtry*, the Seventh Circuit found failing to check in on an inmate whose cell window was covered with toilet paper for five hours would constitute deliberate indifference if the prison employees were aware of his substantial risk of suicide. 266 F.3d 724, 739 (7th Cir. 2001).

Whether *Sanville* is capable of clearly establishing the delay experienced by Mr. Fultz constitutes deliberate indifference is not immediately apparent. The Court notes Defendants' responses fall somewhere in the murky spectrum of responses short of best practices. *Cf. Collins v. Seeman*, 462 F.3d 757, 759 (7th Cir. 2006) (defendant officer not liable where many preventative steps were quickly taken). While Defendants did more than nothing, they also did not appear to always act with urgency to provide care when mental healthcare was delayed or unavailable. But *Sanville* is distinguishable on two grounds. First, the challenged delays arose from mere reports of suicidal ideation, while the *Sanville* court found the delay actionable where

it appeared the inmate was engaging in an attempt. This may have weighed on the *Sanville* court's evaluation of the reasonableness of the Defendants' responses.[5] In this case, once Mr. Fultz began an attempt, Defendants invariably acted effectively and with haste to assist him. Second, Mr. Fultz has failed to provide the Court with even a rough timeline of how long some of the delays lasted, making it extremely difficult to tell whether Defendants' actions constituted clearly established violations. Mr. Fultz argues, for example, that Mr. Taylor did not immediately report his suicidal ideation but instead spoke to other inmates. Did this cause a delay of two minutes or two hours? No answer is provided. It is not clear whether the Defendants would have known of an obvious constitutional violation under the facts stated. As such, the Court is convinced Defendants' arguments are not frivolous, and the finding of waiver is proper.

> (b) *The argument is not frivolous because the illegality of other responses is not obvious.*

Mr. Fultz claims his treatment was inadequate because he was denied any medication for his depression and he was not transferred to a facility that could provide greater mental health and recreation services. Both of these decisions are well-documented in Mr. Fultz's medical records. It is possible that the continued failure to properly treat Mr. Fultz's depression could constitute deliberate indifference if the treatment is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate." *Greeno v. Daley,* 414 F.3d 645, 654 (7th Cir. 2005). But this is a high bar; like the Rehabilitation Act, the Eighth Amendment does not provide a

---

[5] *Lord v. Beahm*, 952 F.3d 902, 905–06 (7th Cir. 2020), though decided after the relevant conduct, supports this distinction: "It suffices to remind that the Eighth Amendment prohibits prison officials from imposing wanton or unnecessary pain by ignoring an inmate who, whether because of major mental illness or some other serious medical need, goes beyond voicing an idle threat of suicide."

remedy for medical malpractice. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In order to be actionable, a plaintiff's case may not merely exhibit a reasonable difference in opinion by medical minds over the appropriate treatment. *King v. Kramer*, 680 F.3d 1013, 1019 (7th Cir. 2012). Neither of the decisions contested by Mr. Fultz are shown to be blatantly inappropriate such that they are capable of sustaining a deliberate indifference claim, and no precedent has been identified that would clearly establish the constitutional violation. *See Est. of Cole by Pardue v. Fromm*, 94 F.3d 254, 263 (7th Cir. 1996) (doctor's incorrect evaluation of suicide risk was a medical judgment that did not rise to the level of substantial departure). Both the decisions regarding whether to prescribe medication and whether Mr. Fultz qualified for the more intensive treatment housing option strike the Court as reasonable exercises of medical discretion, and the Court does not desire to supplant the expertise of those trained in mental healthcare with its own (extremely limited) medical knowledge. *See Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) ("Medical decisions that may be characterized as classic examples of matters for medical judgment, such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview.") (internal citations omitted). Therefore, the Court cannot say the argument Defendants were entitled to qualified immunity is frivolous. The Court properly finds Mr. Fultz has waived the argument, and Defendants other than Officer Rak are entitled to qualified immunity.

> **(3) Officer Rak is not entitled to the benefit of the waiver because the argument is frivolous as applied to her conduct.**

There is one qualified immunity argument that the Court finds frivolous; accordingly, it will not enforce waiver of the argument against Mr. Fultz.[6] That argument concerns the taunting statements exhibited by Officer Rak. Mr. Fultz told Officer Rak and Officer Mangold (who is not a party to this action) that he needed to see mental health because he was feeling suicidal. In response, Officer Rak waved a health care request slip in the window, danced, and laughed at Mr. Fultz. Defense's Statement of Facts does not contest this, and the Defendants' brief on qualified immunity barely musters any defense of this behavior. Instead, it characterizes Officer Rak's behavior as merely failing to quickly get attention for Mr. Fultz's leg cut, a characterization unsupported by the undisputed facts. Officer Rak's behavior is so shockingly unconstitutional that the Court finds a qualified immunity argument in defense of it would be frivolous and would not merit response on summary judgment.

A qualified immunity defense of Officer Rak's behavior is frivolous on summary judgment because her behavior is so clearly unconstitutional that the result of any such argument is obvious. An argument is frivolous when the result is obvious or where it is wholly without merit. *McCoy v. Iberdrola Renewables, Inc.*, 769 F.3d 535, 538 (7th Cir. 2014). An officer is entitled to qualified immunity unless the constitutional violation is clearly established or obvious; as alleged in this case, it was both. The idea that Officer Rak would not have known it was unconstitutional to respond to reports of a suicidal inmate by dancing, laughing, and taunting him while refusing to help him is absurd. It almost inspires a visceral reaction—not only would any trained correctional officer charged with knowing controlling constitutional precedent know this, any

---

[6] The Court notes Mr. Fultz alleges Officer Mangold was also involved in this incident. Officer Mangold is not represented by the group bringing this summary judgment motion and is appearing pro se in this case. In May 2020, Mr. Fultz was ordered to provide proof of service as to Officer Mangold by July 2, 2020 and was cautioned that if he failed to do so or to show good cause, Officer Mangold would be dismissed without prejudice. (DE 43.) That deadline was extended to October 1, 2020. (DE 49.) Mr. Fultz missed the deadline and has never provided proof of service. Accordingly, Officer Mangold is now dismissed without prejudice from this action.

16

adult of normal capacity would know this. This is not a complex constitutional question; even those unfamiliar with the concepts of the Eight Amendment and deliberate indifference can intuit that this behavior is wrong. It is obvious by the plain meaning of the word, and any argument that Officer Rak would not have known of the constitutional violation is entirely meritless.

In addition to being obvious, the constitutional violation was clearly established by circuit precedent at the time of the violation. It is well-established that a prison official cannot be deliberately indifferent to an inmate's report of suicidal ideation. *Est. of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) ("Suicide is a serious harm and prison officials must take reasonable preventative steps when they are aware that there is a substantial risk that an inmate may attempt to take his own life."). And the Seventh Circuit has repeatedly held taunting may evidence deliberate indifference and support an Eighth Amendment claim. *See Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015) (sarcastic comment evidences deliberate indifference by prison doctor); *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997) (same regarding prison officials). Officer Rak's choice to taunt Mr. Fultz in response to his request to see mental health workers establishes both that she was aware of the request and that she did not care to help him. *See Dixon*, 114 F.3d at 645. It is difficult to draw any conclusion other than Officer Rak's deliberate indifference. To the extent the other Defendants were afforded the benefit of waiver because their behavior did not present a clear-cut case of deliberate indifference precluded by precedent, Officer Rak cannot claim the same benefit.

It is difficult to think of a scenario where the behavior is more squarely precluded.[7] The controlling precedent at the time would have put Officer Rak on notice that she could not be

---

[7] *Lisle v. Welborn*, 933 F.3d 705 (7th Cir. 2019), decided after the violations at issue here, provides a useful summary of the relevant precedent in its discussion of a nurse who tauntingly encouraged an inmate to kill himself.

deliberately indifferent to a prisoner's suicide report, that her specific behavior—taunting—was unconstitutional as it evidenced deliberate indifference, and that far less offensive responses to a prisoner's report of suicidal ideation were also unconstitutional. *See Ortiz v. City of Chicago*, 656 F.3d 523, 539 (7th Cir. 2011) (failing to respond in any way to a serious medical need constitutes deliberate indifference). In short, she was way over the line, and now any argument that she could not have known of the illegality of her conduct is frivolous. Therefore, given the clearly established illegality of Officer Rak's conduct, Mr. Fultz's § 1983 claim against Officer Rak survives summary judgment.

### D. Conclusion

For the aforementioned reasons, the Court GRANTS Defendants' motion for summary judgment (DE 99) on Mr. Fultz's § 1983 claims against Defendants Stephen Sego, Roosevelt Smith, and Jerome Taylor. The Court DENIES the motion for summary judgment (DE 99) on Mr. Fultz's § 1983 claim against Defendant Jessica Rak and on the Rehabilitation Act claim against IDOC. The Court further finds Mr. Fultz's duplicative ADA claim against IDOC is abandoned. The Court also DISMISSES WITHOUT PREJUDICE pro se defendant Officer Mangold due to Mr. Fultz's failure to provide proof of service as to Officer Mangold.

SO ORDERED.

ENTERED:  March 1, 2023

/s/ JON E. DEGUILIO
Chief Judge
United States District Court